1  KAREN P. HEWITT
United States Attorney
2  STEWART M. YOUNG
Assistant U.S. Attorney
3  California State Bar No. 234889
United States Attorney's Office
4  Federal Office Building
880 Front Street, Room 6293
5  San Diego, California  92101-8893
Telephone: (619) 557-6228
6  Fax: (619) 557-6741
Email: stewart.young@usdoj.gov
7
Attorneys for Plaintiff
8  UNITED STATES OF AMERICA

9
                    UNITED STATES DISTRICT COURT
10
                 SOUTHERN DISTRICT OF CALIFORNIA
11

12  UNITED STATES OF AMERICA,        )   CRIMINAL CASE NO. 08-CR-1073 L
                                     )
13                                   )   DATE:        May 27, 2008
                  Plaintiff,         )   TIME:        2 P.M.
14                                   )
                                     )   GOVERNMENT'S RESPONSE AND
15         v.                        )   OPPOSITION TO Defendants' MOTIONS
                                     )
16                                   )   [6-1] TO COMPEL DISCOVERY/PRESERVE
                                     )         EVIDENCE;
17  RODRIGO VELASQUEZ-COTA (1),      )   [6-2]  TO PRESERVE AND RE-WEIGH
                                     )          NARCOTIC EVIDENCE;
18  MONIQUE RUIZ-MONTENEGRO (2),     )   [6-3] TO SUPPRESS STATEMENTS;
                                     )   [6-4] TO DISMISS THE INDICTMENT
19                Defendants.        )         BECAUSE THE DRUG STATUES ARE
                                     )         UNCONSTITUTIONAL;
20                                   )   [6-5]  TO DISMISS THE INDICTMENT
                                     )          BECAUSE GRAND JURY WAS NOT
21  _____ )          ASKED TO FIND THAT DEFENDANT
                                             KNEW THE TYPE AND QUANTITY OF
22                                           NARCOTICS;
                                         [6-6]  TO DISMISS BECAUSE OF THE
23                                              INSTRUCTIONS GIVEN BY JUDGE
                                                LARRY BURNS TO THE GRAND
24                                              JURY;
                                         [6-7]  FOR LEAVE TO FILE FURTHER
25                                              MOTIONS.

26                                       TOGETHER WITH A STATEMENT OF THE
                                         FACTS AND THE MEMORANDUM OF
27                                       POINTS AND AUTHORITIES, AND
                                         GOVERNMENT'S MOTIONS FOR:
28
                                         [1] RECIPROCAL DISCOVERY

1  COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

2  KAREN P. HEWITT, United States Attorney, and Stewart M. Young, Assistant United States Attorney,

3  hereby files its Response and Opposition to Defendants' Motions to Compel Discovery, Preserve and

4  Re-Weigh Narcotic Evidence, Suppress Defendants' Statements, Dismiss the Indictment for Various

5  Reasons, and its Motion for Reciprocal Discovery. This response and motion is based upon the files and

6  records of the case together with the attached statement of facts and memorandum of points and

7  authorities.

8  I

9  **STATEMENT OF THE CASE**

10  On April 9, 2008, the Government filed a two-count indictment charging Rodrigo Velasquez-

11  Cota and Monique Ruiz-Montenegro ("Defendants") with violating 21 U.S.C. §§ 952 and 960,

12  importation of 5 kilograms or more of cocaine, and 21 U.S.C. § 841(a)(1), possession of 5 kilograms or

13  more of cocaine with intent to distribute.  The amount specifically alleged in the indictment is 24.86

14  kilograms of cocaine. On April 10, 2008, Defendants was arraigned on the Indictment and entered a plea

15  of not guilty.

16  II

17  **STATEMENT OF FACTS**

18  On February 6, 2008, Defendants entered the United States through the Calexico, California,

19  West Port of Entry.  Defendant Velasquez was the driver and defendant Ruiz was the passenger of a

20  2005 Dodge Stratus.  In pre-primary, Canine Enforcement Officer (CEO) Jones was conducting

21  operations with his Narcotic Detector Dog (NDD).  The NDD alerted to the presence of narcotics in the

22  Dodge Stratus and CEO Jones notified CBP Officer Carp of that alert.  Defendant Velasquez claimed

23  ownership of the vehicle for the last two months and stated that they had been in Mexicali for a few

24  hours to eat.  When asked to turn off the ignition of the vehicle, CBP Officer Carp noticed Velasquez

25  hand's were shaking.  CBP Officer Carp discovered fresh caulking and tampering underneath the

26  dashboard area.  Defendants and the vehicle were escorted to the secondary area.

27  In secondary, CBP Officer Carp discovered a number of packages hidden in the front dashboard

28  non-factory compartment.  A total of 20 packages were found totaling approximately 24.86 kilograms

1    of a substance that field-tested positive for cocaine.

2        Post-Miranda, defendant Ruiz agreed to speak with authorities. She stated at first that she did

3    not know anything about drugs in the vehicle and that she had only gone to eat with defendant

4    Velasquez. She further stated that when they went to a restaurant, she noticed Velasquez talking with

5    someone she did not know for about an hour, and also stated that the car was gone when they were done

6    eating at the restaurant. When agents explained that he story did not make sense and that they believed

7    she was lying, she recanted and stated that she knew there were drugs in the vehicle. She stated that she

8    believed the vehicle contained marijuana, and that she received $500 each time she crossed with

9    defendant Velasquez. She further stated that she had done this on at least two prior occasions.

10                                    **III**

11        **GOVERNMENT'S RESPONSE TO Defendants' MOTION FOR DISCOVERY**

12        The United States intends to fully comply with its discovery obligations under <u>Brady v.</u>

13    <u>Maryland</u>, 373 U.S. 83 (1963), the Jenks Act, 18 U.S.C. § 3500, and Rule 16 of the Federal Rules of

14    Criminal Procedure. Thus far, the United States has produced 96 pages of discovery and DVDs of

15    statements. Defendants' specific requests are addressed below.

16            **(1) The Defendants' Statements**

17        The United States recognizes its obligation under Rule 16(a)(1)(A) and 16(a)(1)(B) to provide

18    to Defendant the substance of Defendants' oral statements and Defendants' written statements. The

19    United States has produced all of Defendants' oral and written statements that are known to the

20    undersigned Assistant U.S. Attorney at this date and all available compact discs. If the United States

21    discovers additional written or oral statements that require disclosure under Rule 16(a)(1)(A) or Rule

22    16(a)(1)(B), such statements will be provided to Defendant.

23        The United States has no objection to the preservation of the handwritten notes taken by any of

24    the United States' agents and officers. <u>See</u> <u>United States v. Harris</u>, 543 F.2d 1247, 1253 (9th Cir. 1976)

25    (agents must preserve their original notes of interviews of an accused or prospective government

26    witnesses). However, the United States objects to providing Defendant with a copy of any rough notes

27    at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those

28    notes have been accurately reflected in a type-written report. <u>See</u> <u>United States v. Brown</u>, 303 F.3d 582,

590 (5th Cir. 2002); <u>United States v. Coe</u>, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report).  The United States is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined under 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness.  <u>United States v. Spencer</u>, 618 F.2d 605, 606-07 (9th Cir. 1980).  The rough notes in this case do not constitute "statements" in accordance with the Jencks Act. <u>See</u> <u>United States v. Ramirez</u>, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms).  The notes are not <u>Brady</u> material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment. <u>Brown</u>, 303 F.3d at 595-96 (rough notes not <u>Brady</u> material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); <u>United States v. Ramos</u>, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained <u>Brady</u> evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or <u>Brady</u>, the notes in question will be provided to the Defendant.

### (2) Arrest Reports, Notes and Dispatch Tapes

The United States has provided the Defendant with arrest reports.  As noted previously, agent rough notes, if any exist, will be preserved, but they will not be provided as part of Rule 16 discovery. The United States is unaware of any dispatch tapes regarding Defendants' apprehension, but has requested the Border Patrol to preserve these if they do exist.  If the United States becomes aware of such dispatch tapes, and those tapes fall under Rule 16 discovery obligations, the United States will provide those tapes.

### (3) Brady Material

Again, the United States is well aware of and will continue to perform its duty under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment.  Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to either of the

accused, or which pertains to the credibility of the United States' case.  As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality."  Id. at 774-775 (citation omitted).

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses.  United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976).  When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

Finally, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

**(4) Sentencing Information**

Defendant claims that the United States must disclose any information affecting Defendants' sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963).  The United States respectfully contends that it has no such disclosure obligation under Brady.

The United States is not obligated under Brady to furnish a defendant with information which he already knows.  United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986).  Brady is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the defendant.  In such case, the United States has not suppressed the evidence and consequently has no Brady obligation.  See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect their guideline ranges, the United States would not be required to provide information bearing on Defendants' mitigation of punishment until after Defendants' convictions or pleas of guilty and prior to their sentencing dates.  See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir.

1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value.").  Additionally, the United States is unaware of any cooperation, or even attempted cooperation, provided by Defendant.  Accordingly, Defendants' demand for this information is premature.

### (5) Defendants' Prior Record

The United States will provide the Defendant with a copy of his criminal record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(B).

### (6) Proposed 404(b) and 609 Evidence

Should the United States seek to introduce any similar act evidence pursuant to Federal Rules of Evidence 404(b) or 609, the United States will provide Defendant with official notice of its proposed use of such evidence and information about such bad act at the time the United States' trial memorandum is filed.

### (7) Evidence Seized

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendants' defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial.  United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

### (8) Preservation of Evidence

The United States will preserve all evidence to which Defendant are entitled pursuant to the relevant discovery rules.  However, the United States objects to any blanket request to preserve all physical evidence.  This appears moot, however, given that it appears this Court has already ruled on Defendants' request to preserve the evidence.

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation

of Defendants' defenses or intended for use by the United States as evidence in chief at trial, or obtained from or belong to Defendant, including photographs. The United States has made the evidence available to Defendant and his investigators and will comply with any request for inspection.

### (9) Henthorn Evidence

Again, as stated in Section III(3) of this Response, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

### (10) Tangible Objects

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that is within its possession, custody, or control, and that is either material to the preparation of Defendants' defense, or intended for use by the United States as evidence during its case-in-chief at trial, or obtained from or belongs to Defendant. The United States need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984). The United States

### (11) Expert Witnesses

The United States will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the United States intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. This summary shall include the expert witnesses' qualifications, the expert witnesses opinions and the bases and reasons for those opinions.

### (12) Impeachment Evidence

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

### (13) Criminal Investigation of Government Witness

Defendant is not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities. "[T]he criminal records of such [Government] witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United States v. Rinn, 586

1  F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no

2  discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a defendant with the criminal records

3  of the Government's intended witnesses.") (citing <u>Taylor</u>, 542 F.2d at 1026).

4      The United States will, however, provide the conviction record, if any, which could be used to

5  impeach witnesses the United States intends to call in its case-in-chief.   When disclosing such

6  information, disclosure need only extend to witnesses the United States intends to call in its case-in-

7  chief.  <u>United States v. Gering</u>, 716 F.2d 615, 621 (9th Cir. 1983); <u>United States v. Angelini</u>, 607 F.2d

8  1305, 1309 (9th Cir. 1979).

9      **(14) Evidence of Bias or Motive to Lie**

10     The United States is unaware of any evidence indicating that a prospective witness is biased or

11  prejudiced against Defendant.  The United States is also unaware of any evidence that prospective

12  witnesses have a motive to falsify or distort testimony.

13     **(15) Evidence Affecting Perception, Recollection, Communication or Truth-Telling**

14     The United States is unaware of any evidence indicating that a prospective witness has a problem

15  with perception, recollection, communication, or truth-telling.

16     **(16) Witness Addresses**

17     The United States has provided Defendant with the reports containing the names of the agents

18  involved in the apprehension and interviews of Defendant.  A defendant in a non-capital case, however,

19  has no right to discover the identity of prospective Government witnesses prior to trial.  <u>See</u> <u>Weatherford</u>

20  <u>v. Bursey</u>, 429 U.S. 545, 559 (1977); <u>United States v. Dishner</u>, 974 F.2d 1502, 1522 (9th Cir 1992)

21  (citing <u>United States v. Steel</u>, 759 F.2d 706, 709 (9th Cir. 1985)); <u>United States v. Hicks</u>, 103 F.23d 837,

22  841 (9th Cir. 1996).  Nevertheless, in its trial memorandum, the United States will provide Defendants

23  with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness

24  list is not required.  <u>See</u> <u>United States v. Discher</u>, 960 F.2d 870 (9th Cir. 1992); <u>United States v. Mills</u>,

25  810 F.2d 907, 910 (9th Cir. 1987).

26     The United States objects to any request that it provide a list of every witness to the crimes

27  charged who will not be called as a United States witness.  "There is no statutory basis for granting such

28  broad requests," and a request for the names and addresses of witnesses who will not be called at trial

"far exceed[s] the parameters of Rule 16(a)(1)(C)." United States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)). The United States is not required to produce all possible information and evidence regarding any speculative defense claimed by Defendants. Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under Brady).

**(17) Name of Witnesses Favorable to the Defense**

The United States objects to any request that it provide a list of every witness to the crimes charged who will not be called as a United States witness. The United States has stated that it will comply with the request for its witness list before trial. "There is no statutory basis for granting such broad requests," and a request for the names and addresses of witnesses who will not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(C)." United States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)). The United States is not required to produce all possible information and evidence regarding any speculative defense claimed by Defendants. Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under Brady). The United States will also comply with its discovery obligations regarding any exculpatory evidence that it might become aware of regarding the defendant. But absent these obligations, the United States is unaware of any witness that may be favorable to the defendant.

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

**(18) Statements Relevant to the Defense**

The United States will continue to comply with its obligations under Brady, Jencks, Giglio, and Rule 16, as pertains to any statement relevant to the defense. However, the United States objects to the broad nature of this request for "any statement that may be 'relevant to any possible defense or contention.'"

**(19) Jencks Act Material**

The Jencks Act, 18 U.S.C. § 3500, requires that, after a United States witness has testified on

direct examination, the United States must give the Defendant any "statement" (as defined by the Jencks Act) in its possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b).  A "statement" under the Jencks Act is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e).   If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act.  United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).  While the United States is only required to produce all Jencks Act material after the witness testifies, the United States plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

Additionally, the United States anticipates that no witness who testified before the grand jury will testify at trial, so the United States does not anticipate that it will have to provide any of the Grand Jury transcripts to Defendant.

### (20) Giglio Information

As stated previously, the United States will comply with its obligations pursuant to Brady v. Maryland, 373 U.S.  83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and Giglio v. United States, 405 U.S. 150 (1972).

### (21) Agreements Between the Government and Witnesses

The United States is unaware of any agreement between it and any cooperating witnesses, who have committed crimes, but were not charged, so that they may testify for the Government in this case. The United States will comply with all of its obligations under  Brady, Giglio, Jencks Act, and Rule 16, regarding any potential cooperating witness, including any of the material witnesses.  Again, at this time, the United States is unaware of any agreement between any of these potential witnesses, but will provide any relevant and pertinent information if such an agreement arises.

### (22) Informants and Cooperating Witnesses

If the Government determines that there is a confidential informant whose identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," it will disclose

1   that person's identity to the Court for in-chambers inspection.  See Roviaro v. United States, 353 U.S.

2   53, 60-61 (1957); United States v. Ramirez-Rangel, 103 F.3d 1501, 1505 (9th Cir. 1997).

3       The United States has already stated it will comply with its Brady, Giglio, Jencks Act, and further

4   Rule 16 discovery obligations.  The United States will comply with the structure of Roviaro if it

5   determines that any confidential informant information is "relevant and helpful to the defense of [the]

6   accused, or is essential to the fair determination of a cause." Roviaro, 353 U.S. at 60.

7       As the Court is aware, the Supreme Court has declined to adopt an absolute rule requiring

8   disclosure of an informant's identity whenever it is relevant or helpful to a Defendants' case.  See

9   Roviaro v. United States, 353 U.S. at 62.  Indeed, as the D.C. Circuit stated in United States v. Skeens,

10  449 F.2d 1066, 1071 (D.C. Cir.1971), a "heavy burden ... rests on an accused to establish that the identity

11  of an informant is necessary to his defense." Id. at 1070. "Mere speculation" that an informant's

12  testimony may assist the defendant is not sufficient to meet this burden.  United States v. Mangum, 100

13  F.3d 164, 172 (D.C. Cir.1996).  In determining whether the Defendant has met this burden, the Court

14  must balance "the public interest in protecting the flow of information against the individual's right to

15  prepare his defense," all the while "taking into consideration the crime charged, the possible defenses,

16  the possible significance of the informer's testimony, and other relevant factors." Roviaro, 353 U.S. at

17  62. The United States will comply with its Rovario obligations, but it also requests that any information

18  provided to the Defendants be subject to in camera review by the Court.

19       **(23) Bias by Informants or Cooperating Witnesses**

20      As stated previously, the United States is unaware of any evidence indicating that any prospective

21  witness, whether Government agent, Informant, or Cooperating Witness, is biased or prejudiced against

22  Defendant.  The United States is also unaware of any evidence that prospective witnesses, whether

23  Government agent, Informant, or Cooperating Witness, have a motive to falsify or distort testimony.

24  It will comply with its Giglio obligations if it becomes aware of any indication of bias on behalf of any

25  of these witnesses.

26       **(24) Henthorn Evidence and Personnel Records of Government Officers Involved in the**

27  **Arrest**

28      The United States will continue to comply with its obligations pursuant to United States v.

Henthorn, 931 F.2d 29 (9th Cir. 1991).

Defendant cites a California Supreme Court case from 1974 for the proposition that he is entitled to "all citizen complaints and other related internal affairs documents involving any of the immigration officers or other law enforcement officers who were involved . . . ." In fact, Pitchess v. Superior Court, 11 Cal. 3d 531, 539 (1974), has been superseded by statute. The legislature's aim in enacting the statute, as described the California Supreme Court, was "to protect such records against 'fishing expeditions' conducted by defense attorneys following the Pitchess decision." City of San Jose v. Superior Court, 5 Cal.4th 47, 54 (1993).

The controlling federal law is United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and the Government, as stated, will continue to comply with those obligations.

### (25) Training of Border Patrol and DEA Agents

Defendant requests copies of any and all written policies and/or training manuals issued by the Department of Homeland Security or the Drug Enforcement Administration regarding issues in this case. The United States opposes such a broad-based request and cannot find any basis in Rule 16, Brady, Giglio, or the Jenks Act for this request. Accordingly, absent a showing for the need for this information, the United States opposes any such request by the defendant.

### (26) Performance Goals and Policy Awards

As with the above request, the United States opposes such a broad-based request and cannot find any basis in Rule 16, Brady, Giglio, or the Jenks Act for this request. Accordingly, absent a showing for the need for this information, the United States opposes any such request by the defendant.

### (27) Opportunity to Weigh, View and Photograph the Contraband

The United States does not oppose the motion to view and photograph the contraband. The United States does take issue with the re-weigh absent a demonstration by Defendant as to the necessity for this re-weigh. Given that the Court apparently has already ruled on this motion, the request appears to be moot.

### (28) DEA 7 Form

The United States has requested the DEA-7 form from the DEA. When the United States receives that form, it will discover this form to Defendant.

1

### (29) TECS Reports

2

The United States objects to the blanket request for all TECS reports regarding Defendant.  The

3

United States will provide any such TECS reports that it plans to use in its case-in-chief to Defendant,

4

but reserves the right to use any TECS reports in its rebuttal case if Defendant elects to put on his case.

5

If the Court is inclined to entertain this request, the Government requests that Defendant demonstrate

6

the materially to his case regarding these TECS records.

7

### (30) Reports of Scientific Tests or Examination

8

The United States will provide the results of any reports of scientific tests or examinations,

9

should any be conducted.  At this time, the United States is aware of no tests or examinations which are

10

material to the preparation of the defense or are intended for use by the United States at trial.

11

### (31) Narcotic Detector Dog Information

12

The United States objects to the blanket request for all reports regarding the NDD in this case.

13

Again, the United States intends to comply with all of its discovery obligations as noted above, but

14

objects to this request given that such information is not material to the defense.  If the Court is inclined

15

to entertain this request, the Government requests that Defendant demonstrate the materially to his case

16

regarding these NDD records.

17

### (32) Residual Request

18

The United States has already complied with Defendants' request for prompt compliance with

19

its discovery obligations prior to Indictment.  The United States will continue to comply with all of its

20

discovery obligations, but objects to the broad nature of Defendants' further discovery requests.

21

**IV**

22

### RE-WEIGHING THE EVIDENCE IS UNNECESSARY AND NOT REQUIRED

23

24

Defendant has requested that the Court issue an order to preserve and re-weigh the evidence.  The

25

Government does not oppose the preservation order.  Although the Government does not oppose

26

Defendants' right pursuant to Rule 16 to inspect and examine the seized evidence, Defendant provides

27

no justifiable basis to re-weigh the evidence.  This Court is not required to order the re-weighing of the

28

evidence, and such an order would constitute a waste of Government resources and an unnecessary delay

1   in the case.

2       District Courts have discretion to deny a defendant's request to retest and/or re-weigh evidence.

3   See United States v. Garcia, 900 F.2d 571, 574 (2d Cir. 1990); see also United States v. Orozco-

4   Rodriguez, 60 F.3d 705, 707 (10th Cir. 1995); United States v. Small, 74 F.3d 1276, 1287 (D.C. Cir.

5   1996).  Where nothing is presented to raise a "reasonable dispute" over the weight of drugs, a district

6   court does not abuse its discretion in refusing to order the re-weigh.  Garcia, 900 F.2d at 574.  For

7   instance, unless a court has reason to believe that any discrepancy in the weight of the drugs is enough

8   to make a defendant eligible for a lower sentence or have a lower mandatory minimum apply to the

9   defendant's case, it is within the court's discretion to deny a defendant's request to re-weigh the

10  evidence.  See Orozco-Rodriguez, 60 F.3d at 707; Small, 74 F.3d at 1287 (holding that the district court

11  did not abuse its discretion in denying the defendant's motion to re-weigh the drugs where the defendant

12  failed to provide any reason to dispute the Drug Enforcement Administration's laboratory analysis and

13  where the defendant had the opportunity to cross-examine the DEA chemist at trial).  The simple fact

14  that the weight of the drugs at issue may be "close to the line" between two guideline ranges or a

15  mandatory minimum cutoff does not raise a "reasonable dispute."  Garcia, 900 F.2d at 575 (affirming

16  district court's denial of the defendant's request to re-weigh crack cocaine at time of sentencing where

17  weight of drugs was only 9.3 milligrams over the applicable guideline range minimum).

18      Defendant has not presented any evidence or argument to raise a "reasonable dispute" about the

19  weight of drugs at issue.  Unless and until such a possibility can be established, the Court should

20  exercise its clear discretion to deny his request for a retest and re-weigh of the drugs.  See Orozco-

21  Rodriguez, 60 F.3d at 707; Small, 74 F.3d at 1287; Garcia, 900 F.2d at 574.

22                                         **V**

23            **DEFENDANTS' STATEMENTS SHOULD NOT BE SUPPRESSED**

24      Defendant Ruiz moves to suppress any statements taken in violation of Miranda v. Arizona,

25  396 U.S. 868 (1969) and claims that the Government must prove that Defendant's waiver of her

26  Miranda rights were voluntary, knowing and intelligent.  First, the rights given to Defendant Ruiz

27  were plain and unambiguous. And the Miranda advisal and the post-arrest statement were video

28  recorded.  The Government will provide the Court with a copy of the recorded interview should the

14

1    Court desire one.  Given this, an evidentiary hearing in this case is simply unnecessary and a waste of

2    judicial resources.

3        **A. The Government Properly Mirandized Defendant.**

4        In this case, <u>Miranda</u> warnings preceded custodial interrogation of Defendant Ruiz.  When a

5    person has been deprived of his or her freedom of action in a significant way, Government agents must

6    administer <u>Miranda</u> warnings prior to questioning the person.  <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

7    Such a requirement, however, has two components: (1) custody, and (2) interrogation.  <u>Id.</u> at 477-78.

8        **B. Defendant Waived Her Miranda Rights and Agreed to Speak with Agents**

9        No threats, physical intimidation, or psychological pressure was exerted by the agents to

10   induce Defendant's statements.  <u>Hutto v. Ross</u>, 429 U.S. 28, 30 (1976); <u>Townsend v. Sain</u>, 372 U.S.

11   293, 307 (1963).  While the Government argues that Defendants' statements were not coerced or

12   involuntarily provided and argues that any <u>Miranda</u> waiver was voluntary, the Government does not

13   oppose an evidentiary hearing conducted by the court on this issue.

14       According to <u>Davis v. Washington</u>, 512 U.S. 452, 458 (1994), and <u>United States v. Younger</u>,

15   398 F.3d 1179, 1187 (9th Cir. 2005), officers are free to question a suspect as long as he or she

16   effectively waives the right to counsel.  In this case, defendant was asked whether she wanted to

17   speak with agents after being read her <u>Miranda</u> rights.  Defendant Ruiz waived her <u>Miranda</u> rights

18   and agreed to speak to agents.  Indeed, agents actually told her: "This is your chance to talk to use, if

19   you want to tell us what's going on.  Um, it's up to you, okay?  You don't have to."  Tr. at 2.  When

20   she said that she wanted to talk, agents asked her "You sure?"  <u>Id</u>.  After she read through the

21   colloquy of rights, agents again stated; "alright, if you answer questions, we're not promising you

22   anything and we're not forcing you."  <u>Id.</u> at 3.

23       Defendant's post-arrest statements are admissible because, as demonstrated on the video

24   recorded statement and the transcript, she knowingly, intelligently, and voluntarily waived his

25   <u>Miranda</u> rights.  A statement made in response to custodial interrogation is admissible under

26   <u>Miranda v. Arizona</u>, 384 U.S. 437 (1966) and 18 U.S.C. § 3501 if a preponderance of the evidence

27   indicates that the statement was made after an advisement of rights, and was not elicited by improper

28   coercion.  <u>See Colorado v. Connelly</u>, 479 U.S. 157, 167-70 (1986) (preponderance of evidence

1    standard governs voluntariness and <u>Miranda</u> determinations; valid waiver of <u>Miranda</u> rights should

2    be found in the "absence of police overreaching"). Although the totality of circumstances, including

3    characteristics of the defendant and details of the interview, should be considered, improper coercive

4    activity must occur for suppression of any statement. <u>See id.</u> (noting that "coercive police activity is

5    a necessary predicate to the finding that a confession is not 'voluntary'"); <u>cf.</u> <u>Schneckloth v.</u>

6    <u>Bustamonte</u>, 412 U.S. 218, 226 (1973) ("Some of the factors taken into account have included the

7    youth of the accused; his lack of education, or his low intelligence; the lack of any advice to the

8    accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the

9    questioning; and the use of physical punishment such as the deprivation of food or sleep.") (citations

10   omitted). While it is possible for a defendant to be in such a poor mental or physical condition that

11   they cannot rationally waive their rights (and misconduct can be inferred based on police knowledge

12   of such condition, <u>Connelly</u>, 479 U.S. at 167-68), the condition must be so severe that the defendant

13   was rendered utterly incapable of rational choice. <u>See</u> <u>United States v. Kelley</u>, 953 F.2d 562, 564

14   (9th Cir.1992) (collecting cases rejecting claims of physical/mental impairment as insufficient to

15   prevent exercise of rational choice).

16       Here, Defendant was properly advised of her <u>Miranda</u> rights following arrest. Again, as

17   demonstrated on the DVD recording and the transcript, Defendant acknowledged that she understood

18   his rights and agreed to answer questions without the presence of an attorney.

19       Defendant claims that her statements were a product of psychological coercion because the

20   agents "ridiculed" what she said happened and told her that her story was "ridiculous." Defendant

21   also claims that her admission was coerced because agents "brought up Ms. Ruiz's child" and

22   therefore she "felt harassed and pressured to speak to agents." However, in determining whether a

23   Defendant was psychologically coerced, this court must look to the totality of the circumstances

24   involved and their effect upon the will of the defendant. <u>United States v. Miller</u>, 984 F.2d 1028,

25   1031 (9th Cir. 1993). The pivotal question is whether the defendant's will was overborne when the

26   defendant made her statements. <u>Id.</u> The totality of the circumstances in this case does not support

27   Defendant's argument that her statements were a product of psychological coercion.

28

Defendant argues that the facts in this case are similar to the facts in United States v. Tingle, 658 F.2d 1332 (9th Cir. 1981) and therefore, the Defendant's confession should be suppressed. In Tingle, the Ninth Circuit held that it is improper coercion when law enforcement officers prey upon the maternal instinct and inculcate fear in a mother that she will not see her child in order to elicit 'cooperation'." Tingle, 658 F.2d at 1335.

Here, Defendant's interview lasted approximately thirty minutes. All of the interview was recorded. As shown on the DVD recording of Defendant's statements, after defendant Ruiz had given a long and obviously untruthful story, an agent made one reference to Defendant's child:

> "You've got a kid that you just got back, who you may not have back anymore. That may be done now, you may have just screwed yourself out of that. And if you keep lying, this is what's going to happen here, we know what happened, okay."

Additionally, according to the transcript provided by defendant, the agent never made any threats to defendant Ruiz, or her son. He further did not make any representations that if defendant Ruiz did not confess to the above-referenced charges, she would lose her son. He also made no reference that if she failed to cooperate with the Government, her failure to cooperate would be communicated to the Government and she might not see her son for a while. See Tingle, at 1336. Indeed, the agent expressed his belief that defendant Ruiz was lying, and that what she had done (by coming across in a car with cocaine) may hurt her chances to be with her child. Contrary to Defendant's claim, the totality of the circumstances involved in this case shows that Defendant was not psychologically pressured into confessing to the charged crimes. As such, Defendant's motion to suppress his statements should be denied.

## VI

## **THE DRUG STATUTES ARE NOT UNCONSTITUTIONAL**

The grand jury charged defendant with violations of 21 U.S.C. §§ 841 and 952, 960. Defendant claims those statutes are unconstitutional. This argument is based upon the dissenting opinion in United States v. Buckland, 277 F.3d 1173 (9th Cir. 2002) (en banc).

The Ninth Circuit has already squarely and repeatedly rejected the claim that Apprendi rendered the federal drug laws, including 21 U.S.C. §§ 841, 952 and 960, facially unconstitutional. See, e.g., United States v. Jimenez, 300 F.3d 1166 (9th Cir. 2002); United States v. Marcucci, 299 F.3d 1156 (9th

Cir. 2002); <u>United States v. Carranza</u>, 289 F.3d 634, 643 (9th Cir. 2002); <u>United States v. Buckland</u>, 289 F.3d 558, 562 (9th Cir. 2002) (en banc); <u>United States v. Mendoza-Paz</u>, 286 F.3d 1104, 1109-10 (9th Cir. 2002); <u>United States v. Varela-Rivera</u>, 279 F.3d 1174, 1175 n.1 (9th Cir. 2002) (recognizing that <u>Buckland</u> foreclosed the argument that 21 U.S.C. §§ 841, 952 and 960 are unconstitutional); <u>United States v. Hernandez</u>, 322 F.3d 592, 609 (9th Cir. 2003).

Sections 841 and 960 do not specify who shall determine drug type and amount, or what burden of proof is required. As a result, two constructions of these statutes are possible; one which construes drug type and amount as determinations to be made by the sentencing judge by a preponderance of the evidence (a construction that poses constitutional problems under <u>Apprendi</u>), and an alternative construction under which drug type and amount are findings to be made by the jury beyond a reasonable doubt (a constitutionally valid construction).

Faced with these two competing interpretations, and in the absence of clear congressional intent, the Ninth Circuit employed the constitutional avoidance doctrine. Under that doctrine, every reasonable construction must be indulged in order to save a statute from unconstitutionality. <u>Buckland</u>, 289 F.3d at 564. Thus, where an otherwise acceptable construction of a statute would raise "serious constitutional problems," and where an alternative interpretation of the statute is "fairly possible," courts are obligated to construe the statute to avoid such problems. <u>Id.</u> Because it is "fairly possible" to interpret drug type and quantity as determinations required to be made by the jury, and because that interpretation is constitutionally valid, the Ninth Circuit has interpreted 21 U.S.C. § 841 (as well as its "structurally identical" counterpart, 21 U.S.C. § 960) as requiring the jury to determine drug type and quantity beyond a reasonable doubt. <u>Buckland</u>, 289 F.3d 567-68; <u>Mendoza-Paz</u>, 286 F.3d at 1110.

Accordingly, the statutes under which Defendant is charged do not violate the <u>Apprendi</u> rule and are constitutional. <u>Id.</u>

**VII**

**<u>THE INDICTMENT SHOULD NOT BE DISMISSED BECAUSE THE GRAND JURY WAS NOT ASKED TO FIND THAT DEFENDANT KNEW OF THE TYPE AND AMOUNT OF THE DRUGS IN THE VEHICLE</u>**

Defendant moves to dismiss the indictment because the grand jury did not find that Defendant knew the weight or type of substance he was smuggling into the United States. However, the Ninth

Circuit has clearly held that "Apprendi did not change the long established rule that the government need not prove the defendant knew the *type* and *amount* of a controlled substance that he imported or possessed; the government need only show that the defendant knew that he imported or possessed *some* controlled substance." Carranza, 289 F.3d at 644. Therefore, contrary to Defendant's argument, the indictment in this case is valid.

**VIII**

**THE INDICTMENT SHOULD NOT BE DISMISSED BECAUSE THE GRAND JURY INSTRUCTIONS PROVIDED TO THE JANUARY 2007 GRAND JURY DO NOT RUN AFOUL OF CURRENT NINTH CIRCUIT LAW**

The United States believes the reasoning of the order issued on December 5, 2007, in United States v. Diana Jimenez-Bermudez, Case 07-1372 JAH is persuasive and requests this Court to follow the reasoning outlined by that opinion. Additionally, the United States further submits that the additional reasoning provided in the order issued on October 11, 2007, in United States v. Manuel Martinez-Covarrubias, Case 07-CR-491 BTM is also persuasive. Accordingly, the United States attaches both orders as Attachments 1 and 2 for the Court's perusal in making its decision on this motion.

**VI**

**NO OPPOSITION TO DEFENDANTS' REQUEST FOR LEAVE TO FILE FURTHER MOTIONS**

The United States does not object to the granting of leave to allow Defendant to file further motions, as long as the order applies equally to both parties and additional motions are based on newly discovered evidence or discovery provided by the United States subsequent to the instant motion at issue.

**VII**

**MOTION FOR RECIPROCAL DISCOVERY**

The United States hereby moves for reciprocal discovery from the Defendant. To date Defendants have not provided any. The United States, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, requests that Defendants permit the United States to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of

portions thereof, which are within the possession, custody or control of Defendants and which Defendants intend to introduce as evidence in their case-in-chief at trial.

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of Defendants, which Defendants intend to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendants intends to call as a witness. Because the United States will comply with Defendants' request for delivery of reports of examinations, the United States is entitled to the items listed above under Rule 16(b)(1) of the Federal Rules of Criminal Procedure. The United States also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the United States receives the discovery to which it is entitled.

In addition, Rule 26.2 of the Federal Rules of Criminal Procedure requires the production of prior statements of all witnesses, except a statement made by Defendant. This rule thus provides for the reciprocal production of Jencks statements. The time frame established by the rule requires the statement to be provided after the witness has testified. To expedite trial proceedings, the United States hereby requests that Defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the Court. Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and/or reports.

08-CR-1073 L

# V

## <u>CONCLUSION</u>

For the above stated reasons, the United States respectfully submits its Response and Opposition to Defendants' Motions for Discovery, and requests that its Motion for Reciprocal Discovery be granted.

DATED: December 17, 2007.

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

*s/Stewart M. Young*
STEWART M. YOUNG
Assistant U.S. Attorney
Email: stewart.young@usdoj.gov

08-CR-1073 L

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal Case No. 3:08-CR-1073 L |
| Plaintiff, | ) |
| v. | ) CERTIFICATE OF SERVICE |
| RODRIGO VELASQUEZ-COTA (1), | ) |
| MONIQUE RUIZ-MONTENEGRO (2), | ) |
| Defendants. | ) |

IT IS HEREBY CERTIFIED THAT:

I, Stewart M. Young, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the United States' Response and Opposition to Defendants' Motion to Compel Discovery, Motion to Dismiss Indictment for Various Reasons, Motion to Suppress Statements, and Leave to File Further Motions, as well as the Government's Motion for Reciprocal Discovery on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Robert Carriedo, Esq.

2. Erica Zunkel, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 23, 2008

s/ *Stewart M. Young*
Stewart M. Young